UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES W. JORDAN, | ) |
| Plaintiff, | ) No. CV-05-0026-MWL<br>) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security, | )<br>)<br>) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment,
noted for hearing without oral argument on October 31, 2005. (Ct.
Rec. 13, 16).  Plaintiff James W. Jordan ("Plaintiff") filed a
reply on September 26, 2005.  (Ct. Rec. 21).  Attorney Maureen J.
Rosette represents Plaintiff; Special Assistant United States
Attorney Richard A. Morris represents the Commissioner of Social
Security ("Commissioner").  The parties have consented to proceed
before a magistrate judge.  (Ct. Rec. 7).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).
///

- 1 -

**JURISDICTION**

On September 13, 2001, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability since November 9, 1996, due to chronic depression, upper back pain (fibromyalgia), feeling stressed/overwhelmed, a personality disorder and stomach pain. (Administrative Record ("AR") 19, 136, 106-108). The application was denied initially and on reconsideration. On February 20, 2003, Plaintiff appeared before Administrative Law Judge ("ALJ") R.J. Payne, at which time testimony was taken from Plaintiff, medical expert Jay Toews, M.D., and vocational expert Tom Moreland. (AR 35-72). On May 15, 2003, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-28). The Appeals Council denied a request for review on December 10, 2004. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 54 years old on the date of the ALJ's decision and 50 years old on the date he was last insured for disability benefits. (AR 26, 106).

At the administrative hearing held on February 20, 2003, Plaintiff stated that he stands about six feet tall and weighs about 160 pounds. (AR 45). He indicated that he is divorced and

has one six-year-old son who lives with his mother.  (AR 46).

Plaintiff testified that he finished high school and has attended

a few semesters at a community college.  (AR 46-47).  Plaintiff

last worked as an assistant manager with developmentally disabled

adults in a home setting in November of 1996.  (AT 47).  He worked

in that capacity for approximately two years.  Prior to that, he

worked for about two years as a nursing assistant in individual

homes.  (AR 47).  He also worked as a certified nursing assistant

in a hospital before working as a nursing assistant in individual

homes. (AR 47-48).  Plaintiff reported that he stopped working on

November 6, 1996, because he was over-stressed, tired, depressed,

and overwhelmed, was drinking and had a "break down."  (AR 136).

     The record reflects that Plaintiff earned money in 1998 and

1999 performing work study at a community college.  (AR 48-49).

Plaintiff indicated that he began receiving Supplemental Security

Income ("SSI") benefits in December of 2001.  (AR 49).  The SSI

determination was made at the initial level and was apparently

based on Plaintiff's mental condition.  (AR 50).  Plaintiff had

also received SSI benefits from November of 1988 until May of 1995

due to a schizoaffective disorder and a mixed personality

disorder.  (AR 18, 50).

     During the relevant time period, November 1996 to September

1998, Plaintiff reported feeling very depressed, isolating himself

from others and having a lot of upper back pain (rated as a seven

on a scale of one to 10, with 10 being the worst pain imaginable).

(AR 51).  Plaintiff also indicated that he had difficulty with

nausea which would occur in the morning and could last between 40

///

1  minutes and all day.  (AR 55).  During the relevant time period,

2  Plaintiff testified that he could sit for about 40 to 45 minutes

3  at one time, stand for about 30 minutes at a time, bend over with

4  difficulty, and lift about 15 to 20 pounds at the most.  (AR 52-

5  53).  On days when Plaintiff felt nauseated, he indicated he was

6  unable to do anything.  (AR 55).

7       Plaintiff testified that, during the relevant time period, he

8  attended the Axis Program at Spokane Mental Health for his schizo-

9  affective disorder and chronic depression.  (AR 57).  He took five

10  different classes dealing with psychological makeup, Monday

11  through Friday.  (AR 57).  He was also attending Spokane Falls

12  Community College, going about three days per week for one and a

13  half to three hours at a time.  (AR 58).  He was taking English

14  classes in an attempt to get a teaching degree.  (AR 58).

15  Plaintiff indicated that he started out taking too many classes

16  and got overwhelmed.  (AR 59).  Spokane Falls Community College

17  transcripts for the period spring 1998 to spring 1999, received

18  into the record following the administrative hearing, reveal that

19  during the spring and summer of 1998, Plaintiff earned nine

20  credits and maintained a 3.02 grade point average.  (AR 24).

21  However, his grade point average fell to 1.26 and he earned no

22  further credits.  (AR 24).

23       Plaintiff testified that, during the relevant time period, he

24  normally woke up around 6:00 a.m. and went to bed around 6:00

25  p.m., getting roughly eight or nine hours of sleep due to

26  interrupted sleep.  (AR 62-63).  He stated he would get up and get

27  ready for school, take a 20 minute bus ride to school, spend about

28  two or three hours at school, and then return home where he

1  listened to the radio and did his homework.  (AR 63-64).

2  Plaintiff stated that he made his own meals, did housework, did

3  the laundry and went grocery shopping 10 or more times a month for

4  about 20 to 25 minutes at a time.  (AR 64, 66).  He testified that

5  he had no hobbies, social activities or friends.  (AR 64-66).  He

6  stated that he smoked a couple packs of cigarettes a day, drank

7  about one bottle of beer three or four times a week and did not

8  use street drugs.  (AR 65-66).

9      Medical expert Jay Toews and vocational expert Tom Moreland

10  also testified at the administrative hearing held on February 20,

11  2003.  (AR 38-44, 67-71).

## SEQUENTIAL EVALUATION PROCESS

13      The Social Security Act (the "Act") defines "disability" as

14  the "inability to engage in any substantial gainful activity by

15  reason of any medically determinable physical or mental impairment

16  which can be expected to result in death or which has lasted or

17  can be expected to last for a continuous period of not less than

18  twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

19  Act also provides that a Plaintiff shall be determined to be under

20  a disability only if his impairments are of such severity that

21  Plaintiff is not only unable to do his previous work but cannot,

22  considering Plaintiff's age, education and work experiences,

23  engage in any other substantial gainful work which exists in the

24  national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

25  Thus, the definition of disability consists of both medical and

26  vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

27  (9th Cir. 2001).

28  ///

1    The Commissioner has established a five-step sequential

2  evaluation process for determining whether a person is disabled.

3  20 C.F.R. §§ 404.1520, 416.920.   Step one determines if he is

4  engaged in substantial gainful activities.   If he is, benefits are

5  denied.   20 C.F.R. §§ 404.1520(b), 416.920(b).   If he is not, the

6  decision maker proceeds to step two, which determines whether

7  Plaintiff has a medically severe impairment or combination of

8  impairments.   20 C.F.R. §§ 404.1520(c), 416.920(c).

9    If Plaintiff does not have a severe impairment or combination

10  of impairments, the disability claim is denied.   If the impairment

11  is severe, the evaluation proceeds to the third step, which

12  compares Plaintiff's impairment with a number of listed

13  impairments acknowledged by the Commissioner to be so severe as to

14  preclude substantial gainful activity.   20 C.F.R. §§ 404.1520(d),

15  416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.   If the impairment

16  meets or equals one of the listed impairments, Plaintiff is

17  conclusively presumed to be disabled.   If the impairment is not

18  one conclusively presumed to be disabling, the evaluation proceeds

19  to the fourth step, which determines whether the impairment

20  prevents Plaintiff from performing work he has performed in the

21  past.   If Plaintiff is able to perform his previous work, he is

22  not disabled.   20 C.F.R. §§ 404.1520(e), 416.920(e).   If Plaintiff

23  cannot perform this work, the fifth and final step in the process

24  determines whether Plaintiff is able to perform other work in the

25  national economy in view of his residual functional capacity and

26  his age, education and past work experience.   20 C.F.R. §§

27  404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

28  ///

1  The initial burden of proof rests upon Plaintiff to establish

2  a *prima facie* case of entitlement to disability benefits.

3  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

4  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is

5  met once Plaintiff establishes that a physical or mental

6  impairment prevents him from engaging in his previous occupation.

7  The burden then shifts to the Commissioner to show (1) that

8  Plaintiff can perform other substantial gainful activity and (2)

9  that a "significant number of jobs exist in the national economy"

10 which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498

11 (9th Cir. 1984).

12 **STANDARD OF REVIEW**

13  Congress has provided a limited scope of judicial review of a

14 Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold

15 the Commissioner's decision, made through an ALJ, when the

16 determination is not based on legal error and is supported by

17 substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995

18 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

19 1999).  "The [Commissioner's] determination that a plaintiff is

20 not disabled will be upheld if the findings of fact are supported

21 by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572

22 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

23 is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

24 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.

25 *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);

26 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d

27 573, 576 (9th Cir. 1988).  Substantial evidence "means such

28 evidence as a reasonable mind might accept as adequate to support

1  a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

2  (citations omitted).   "[S]uch inferences and conclusions as the

3  [Commissioner] may reasonably draw from the evidence" will also be

4  upheld.   *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

5  On review, the court considers the record as a whole, not just the

6  evidence supporting the decision of the Commissioner.   *Weetman v.*

7  *Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.*

8  *Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

9       It is the role of the trier of fact, not this court, to

10  resolve conflicts in evidence.   *Richardson,* 402 U.S. at 400.   If

11  evidence supports more than one rational interpretation, the court

12  may not substitute its judgment for that of the Commissioner.

13  *Tackett*, 180 F.3d at 1097;   *Allen v. Heckler*, 749 F.2d 577, 579

14  (9th Cir. 1984).   Nevertheless, a decision supported by

15  substantial evidence will still be set aside if the proper legal

16  standards were not applied in weighing the evidence and making the

17  decision.   *Brawner v. Secretary of Health and Human Services*, 839

18  F.2d 432, 433 (9th Cir. 1987).   Thus, if there is substantial

19  evidence to support the administrative findings, or if there is

20  conflicting evidence that will support a finding of either

21  disability or nondisability, the finding of the Commissioner is

22  conclusive.   *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.

23  1987).

24                          **ALJ'S FINDINGS**

25       The ALJ found at step one that Plaintiff has not engaged in

26  substantial gainful activity since the alleged onset date,

27  November 9, 1996.   (AR 19).   At step two, the ALJ determined that

28  Plaintiff has the severe impairments of status post gastrectomy

with chronic anemia and degenerative disc disease of the thoracic spine, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 24).  The ALJ indicated that Plaintiff also has a history of depression with anxiety and a personality disorder, but his depression and personality disorder were not severe during the relevant time period.  (AR 24).  The ALJ noted that medical expert Toews testified that, absent substance abuse, those mental impairments caused no restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation.  (AR 24).  The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of light exertion work.  (AR 25).  He found that Plaintiff could lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. (AR 25).

At step four of the sequential evaluation process, the ALJ found that Plaintiff lacks the RFC to perform the exertional requirements of his past relevant work.  (AR 26).  However, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, the ALJ determined that there were a significant number of jobs in the national economy which Plaintiff could perform despite his limitations.  (AR 26-27). Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 27-28).

1
                              **ISSUES**

2        Plaintiff contends that the Commissioner erred as a matter of

3   law.  Specifically, he argues that:

4        1.   The ALJ erred by finding that Plaintiff did not have a

5   severe mental impairment during the relevant period; and

6        2.   The ALJ erred by failing to first complete the

7   sequential evaluation process to determine disability without

8   separating out the impact of Plaintiff's alcohol or drug use.

9        This court must uphold the Commissioner's determination that

10  Plaintiff is not disabled if the Commissioner applied the proper

11  legal standards and there is substantial evidence in the record as

12  a whole to support the decision.

13                            **DISCUSSION**

14  **A.   Severe Mental Impairment**

15        Plaintiff contends that the ALJ erred by concluding that he

16  did not have a severe mental impairment during the relevant time

17  period.  (Ct. Rec. 14, pp. 10-14).  Plaintiff asserts that he

18  provided ample evidence, consisting of signs, symptoms and

19  laboratory findings, proving the existence of a severe mental

20  impairment during the time period in question (November 1996

21  through September 30, 1998).  (Ct. Rec. 14, pp. 11-14).  The

22  Commissioner responds that all of the medical records from

23  Plaintiff's treating and examining sources for the period at issue

24  support the ALJ's finding that Plaintiff did not have a severe

25  mental impairment during that period.  (Ct. Rec. 17, pp. 9-14).

26  The undersigned agrees.

27        Plaintiff was evaluated and treated at Spokane Mental Health

28  from May 1997 through June 1998.  (AR 245-271, 683-733).  The

                              - 10 -

1 records reflect that Plaintiff attended classes and received

2 individually counseling at Spokane Mental Health.  On May 5, 1997,

3 Heather Hamasaki, MSW, initially diagnosed Plaintiff with a

4 depressive disorder, not otherwise specified ("NOS"), rule out

5 alcohol abuse, and a personality disorder, NOS, with narcissistic

6 traits, and gave Plaintiff a global assessment of functioning

7 ("GAF") score of 55.[1]  (AR 248).  It was also noted on May 5,

8 1997, that Plaintiff's diagnosis was depression, NOS, and his

9 impairments consisted of mood swings, poor concentration, and an

10 inability to do things/hopeless.  (AR 251).  It was reported that

11 Plaintiff denied current substance use; however, in 1991, he had

12 consumed a six-pack of beer every day and continues to have

13 periodic relapses.  (AR 251).  On November 18, 1997, the diagnosis

14 was changed to cyclothymic disorder, and he was given a GAF score

15 of 65.[2]  (AR 254).  On May 1, 1998, upon discharge from Spokane

16 Mental Health because treatment goals had been achieved, Plaintiff

17 was diagnosed with cyclothymia and a personality disorder, NOS,

18 with narcissistic traits and given a GAF score of 68.  (AR 270).

19      Geoffrey S. Jones, M.D., treated Plaintiff from November 1997

20 until at least July 1998.  (AR 272-287).  On November 17, 1997,

21 Dr. Jones noted that Plaintiff had a long history of depression,

22 but that he was currently "fairly well controlled" on medication.

23

---

24   [1]A GAF of 51 to 60 indicates moderate symptoms (e.g. flat affect and
circumstantial speech, occasional panic attacks), OR moderate difficulty in
25 social, occupational, or school function (e.g. few friends, conflicts with
peers or co-workers).  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32
26 (4th ed. 1994).

27   [2]A GAF of 70-61 is characterized as: "Some mild symptoms or some
difficulty in social, occupational, or school functioning, but generally
28 functioning pretty well."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV
32 (4th ed. 1994).

1  (AR 272).  Plaintiff reported a good mood, adequate sleeping, an

2  OK appetite, and no weight loss, anhedonia, suicidal ideation,

3  intention guilt, or worthless feelings.  (AR 272).  It was noted

4  that Plaintiff smokes one to one and a half packs of cigarettes

5  per day, drinks an occasional alcoholic beverage, has not done

6  drugs since "the 60's," and walks three miles a day.  (AR 272).

7  Dr. Jones assessed chronic thoracic back pain, fatigue secondary

8  to vitamin B12 deficiency, and depression, well controlled.  (AR

9  273).

10  On July 20, 1998, Dr. Jones indicated that Plaintiff was

11  significantly disabled by his depression in the past; however,

12  currently, Plaintiff's depression was assessed by Dr. Jones as

13  stable.  Dr. Jones did not feel comfortable assessing Plaintiff's

14  level of disability for depression.  (AR 278-279).

15  On July 30, 1998, John P. Moulton, Ph.D., completed a

16  psychiatric evaluation of Plaintiff.  (AR 335-338).  Dr. Moulton

17  noted that Plaintiff has a history of episodic depressions, two of

18  which resulted in psychiatric hospitalization, once in 1984 after

19  he lost a job and had stomach surgery and again in 1987 after a

20  romantic relationship ended.  (AR 335).  Dr. Moulton reported that

21  Plaintiff felt like he had made "considerable improvements" and

22  had become more optimistic, even confident, that he could return

23  to the workforce when he completed his education.  (AR 335).

24  Plaintiff indicated to Dr. Moulton that his general mood was

25  "pretty good," his sleep was adequate, his appetite good, and he

26  was enjoying biking, walking and social activity.  (AR 335).

27  ///

28  ///

- 12 -

1  Plaintiff reported that he had not used alcohol, but had

2  previously drank brandy, daily, after giving up his job in 1996.

3  (AR 336).

4      Dr. Moulton diagnosed Plaintiff with depression episode, may

5  have been major depression or a dysthymic disorder, now in

6  remission, and probable mixed personality disorder, NOS.  (AR

7  337).  He gave Plaintiff a GAF score of 70, noting that

8  Plaintiff's level of functioning in the past year had been

9  improving steadily and was "presently good."  (AR 337).  Dr.

10  Moulton opined that, from a psychiatric viewpoint, Plaintiff was

11  capable of employment at that time.  (AR 338).  Dr. Moulton

12  specifically opined that Plaintiff "has no current psychiatric

13  disability that would preclude working."  (AR 338).

14      Jay M. Toews, Ed. D., testified as a medical expert at the

15  administrative hearing held on February 20, 2003.  (AR 38-44).

16  Dr. Toews testified that after reviewing the evidence of record,

17  he believed that Plaintiff's psychiatric problems were not severe

18  during the period at issue, November 1996 through September 1998,

19  and that Plaintiff had no psychiatric disability that would

20  preclude employment.  (AR 41-42).  Dr. Toews noted that the

21  Spokane Mental Health records indicated that Plaintiff had been

22  discharged from treatment as significantly improved, and that he

23  was reporting the symptoms to be barely bothersome.  (AR 43).  Dr.

24  Toews also reported that Dr. Moulton's report indicated

25  significant improvement, that Plaintiff was functioning well in

26  school, and that his mental status was excellent, with a GAF score

27  of 70.  (AR 43).

28  ///

1       Two and a half months following the expiration of Plaintiff's

2   insured status, Plaintiff was evaluated by Mahlon Dalley, Ph.D.

3   (AR 505-508).  Dr. Dalley filled out a Psychological/Psychiatric

4   Evaluation form, diagnosed Plaintiff with a major depressive

5   disorder, recurrent, moderate and a personality disorder, NOS,

6   with schizotypal, borderline and depressive features, and opined

7   that Plaintiff had moderate and marked limitations in his ability

8   to do certain work-related functions.  (AR 505-507).  Dr. Dalley's

9   examination, however, was conducted on December 18, 1998, which,

10  as Plaintiff concedes, was more than two months outside the period

11  at issue in this case.  (AR 505-508; Ct. Rec. 14, p. 12).  "The

12  opinion of a psychiatrist who examines the claimant after the

13  expiration of his disability insured status, however, is entitled

14  to less weight than the opinion of a psychiatrist who completed a

15  contemporaneous exam."  *Macri v. Chater* 93 F.3d 540, 545 (9th Cir.

16  1996).

17      The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c),

18  provide that an impairment is severe if it significantly limits

19  one's ability to perform basic work activities.  An impairment is

20  considered non-severe if it "does not significantly limit your

21  physical or mental ability to do basic work activities."  20

22  C.F.R. §§ 404.1521, 416.921.  Plaintiff has the burden of proving

23  that he has a severe impairment.  42 U.S.C. § 423(d)(1)(A); 20

24  C.F.R. § 416.912.  In order to meet this burden, Plaintiff must

25  furnish medical and other evidence that shows that he is disabled.

26  20 C.F.R. § 416.912(a).  In the absence of objective evidence to

27  ///

28  ///

1 verify the existence of an impairment, the ALJ must reject the

2 alleged impairment at step two of the sequential evaluation

3 process.   SSR 96-4p.

4      In this case, the ALJ concluded that Plaintiff has the severe

5 impairments of status post gastrectomy with chronic anemia and

6 degenerative disc disease of the thoracic spine.  (AR 24).

7 However, the ALJ evaluated the evidence of record, considered the

8 hearing testimony of Plaintiff and the medical expert, and

9 concluded that Plaintiff did not have a severe mental impairment.

10 (AR 24).  The ALJ specifically found that Plaintiff has a history

11 of depression with anxiety and a personality disorder, but his

12 depression and personality disorder were not severe during the

13 relevant time period.  (AR 24).  With regard to Plaintiff's mental

14 limitations, the ALJ noted that medical expert Toews testified

15 that, absent substance abuse, those mental impairments caused no

16 restrictions of activities of daily living and only mild

17 difficulties in maintaining social functioning and in maintaining

18 concentration, persistence, or pace.  (AR 24).

19      As noted by the Commissioner (Ct. Rec. 17, p. 13), while

20 Plaintiff's condition may have worsened over time, Plaintiff must

21 establish that he was disabled at or before the date his insured

22 status expired, September 30, 1998.  *Tidwell v. Apfel*, 161 F.3d

23 599, 601 (9th Cir. 1999).  The medical records during the relevant

24 time period (November 1996 through September 30, 1998), as well as

25 the opinion of medical expert Toews, support the ALJ's finding

26 that Plaintiff's mental impairments were not severe during that

27 period of time.

28 ///

1    The ALJ reviewed and thoroughly addressed the medical records

2 relevant to the time period at issue in this case.  (AR 20-24).

3 The evidence of record displays that Plaintiff has a history of

4 depression which was under control and stable during the time

5 period at issue in this case, November 1996 through September 30,

6 1998.  (AR 272-273, 278-279, 337-338, 41-42).  Relying on the

7 relevant medical records, as well as the opinion of Dr. Toews, the

8 ALJ properly determined that Plaintiff's mental impairments caused

9 no restrictions of activities of daily living, only mild

10 difficulties in maintaining social functioning and in maintaining

11 concentration, persistence, or pace, and no episodes of

12 decompensation.  (AR 24).  An impairment is severe if it

13 significantly limits one's ability to perform basic work

14 activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Plaintiff did

15 not meet his burden at step two of the sequential evaluation

16 process to establish the existence of a severe mental impairment

17 during the relevant time period.  42 U.S.C. § 423(d)(1)(A); 20

18 C.F.R. § 416.912.  Accordingly, the ALJ's determination at step

19 two is without error.

20 **B.   Alcohol Use**

21    Plaintiff also asserts that the ALJ erred, because he should

22 have completed the five-step evaluation process to determine

23 disability without separating out the impact of alcoholism or drug

24 addiction from Plaintiff's mental impairments.  (Ct. Rec. 14, p.

25 14).

26    The Social Security Act bars payment of benefits when drug

27 addiction and/or alcoholism ("DAA") is a contributing factor

28 material to a disability claim.  42 U.S.C. §§ 423(d)(2)(C),

1   1382(a)(3)(J); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.

2   1998).   "Material" means that the individual would not be found

3   disabled if he stopped using drugs and/or alcohol.   Plaintiff has

4   the burden of showing that his DAA is not a contributing material

5   factor to disability.   *Ball v. Massanari*, 254 F.3d 817, 823 (9th

6   Cir. 2001).   If there is evidence of DAA and the individual

7   succeeds in proving he is disabled, the Commissioner must

8   determine whether the DAA is material to the determination of

9   disability.   20 C.F.R. §§ 404.1535, 416.935.   If an ALJ finds that

10  the claimant is not disabled, then the claimant is not entitled to

11  benefits and there is no need to proceed with the analysis to

12  determine whether alcoholism is a contributing factor material to

13  disability.   However, if the ALJ finds that the claimant is

14  disabled and there is medical evidence of drug addiction or

15  alcoholism, then the ALJ must proceed to determine if the claimant

16  would be disabled if he stopped using alcohol or drugs.

17  *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

18      In this case, the ALJ evaluated the evidence of record,

19  considered the hearing testimony of Plaintiff and the medical

20  expert and concluded that Plaintiff's mental impairments, without

21  consideration of the affects of his alcohol abuse, result in no

22  restrictions of activities of daily living, mild difficulties in

23  maintaining social functioning and in maintaining concentration,

24  persistence, or pace, and no episodes of decompensation.   (AR 24).

25  Even though, as Plaintiff correctly asserts (Ct. Rec. 14, p. 14),

26  evidence of DAA must be initially included in the sequential

27  evaluation analysis, the ALJ made his disability determination

28  absent consideration of Plaintiff's past alcohol abuse.   (AR 24).

1   Nevertheless, the Commissioner in this case concedes that

2   Plaintiff did not have a material drug addiction and/or alcoholism

3   during the relevant time period.  (Ct. Rec. 17, p. 17).   The

4   record in Plaintiff's case establishes that he has a history of

5   alcohol abuse; however, during the relevant time period, no

6   alcoholism or drug use was reported or documented.  (AR 251, 272,

7   336).   In fact, Plaintiff specifically testified at the

8   administrative hearing that he drank only about one bottle of beer

9   three or four times a week and did not use street drugs during the

10  relevant time period.  (AR 65-66).

11       Accordingly, even if the ALJ erred by making his disability

12  determination independent of Plaintiff's past alcohol abuse, it

13  was harmless error, because there was no valid evidence of DAA

14  during the relevant time period in this case.  An error is

15  harmless when the corrections of that error would not alter the

16  result.  *Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir.

17  1995).  Since DAA is not a material contributing factor in this

18  case, it was, at most, harmless error for the ALJ to separate out

19  the impact of alcohol abuse when conducting the five-step

20  sequential evaluation process.

21                              **CONCLUSION**

22       Having reviewed the record and the ALJ's conclusions, this

23  Court finds that the ALJ's decision that Plaintiff is capable of

24  performing work existing in sufficient numbers in the national

25  economy, is supported by substantial evidence and free of legal

26  error.  Plaintiff is thus not disabled within the meaning of the

27  Social Security Act.  Accordingly,

28  ///

1    **IT IS ORDERED**:

2        1.   Plaintiff's Motion for Summary Judgment (Ct. Rec.

3  13) is **DENIED**.

4        2.   Defendant's Motion for Summary Judgment (Ct. Rec.

5  16) is **GRANTED**.

6        3.   The District Court Executive is directed to enter

7  judgment in favor of Defendant, file this Order, provide a copy to

8  counsel for Plaintiff and Defendant, and **CLOSE** this file.

9    **DATED** this   30th   day of November, 2005.

10

                                s/Michael W. Leavitt
11                              MICHAEL W. LEAVITT
                             UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28